Nora CHISOLM, et al., Petitioner,

v.

TranSOUTH FINANCIAL
CORPORATION,
Respondent.

No. Civ. 2:93cv632.

United States District Court,
E.D. Virginia,
Norfolk Division.

March 15, 1999.

F. Paul Bland, Trial Lawyers for Public Justice, Washington, DC, for plaintiffs.

Gregory N. Stillman, Hunton & Williams, Norfolk, VA, for defendant.

## MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

This matter is before the Court on Plaintiffs' Motion for Class Certification.[1] Having reviewed the relevant pleadings and responses and heard argument on all pertinent motions,[2] the Court **GRANTS** Plaintiffs' Motion for Class Certification.

### I. FACTUAL BACKGROUND

Plaintiffs filed this class action over five years ago on June 17, 1993. The plaintiffs are used car purchasers. They are suing Defendant TranSouth Financial Corporation ("TranSouth"), a car financing company, for violating the Racketeer Influenced and Corrupt Organizations Act (RICO). Plaintiffs allege that Defendant committed mail fraud in a revolving repossession, or "churning," scheme. There are roughly 2500 putative class members with claims against the defendant.

The named plaintiffs are Nora Chisolm, Tina Wilce, Laura Richards and Starlette Seamster. They reside in Norfolk and Fairfax, Virginia.

The defendant is a South Carolina corporation with its principal place of business in

---

1. On January 30, 1997, the plaintiffs filed the instant Motion for Class Certification. It was subsequently denied by Magistrate Judge Prince. The Court of Appeals reversed and remanded the Magistrate's Order. The procedural history is provided *infra* at pp. 558–59.

2. In addition to the pending Motion to Certify the Class, the parties filed the following pleadings with the Court subsequent to the Fourth Circuit reversal: (1) a Motion to Strike Defendant's Supplemental Memorandum in Support of the Motion to Deny Class Certification; (2) Plaintiffs' Motion to Stay Defendant's Second Motion to Deny Class Certification; and, (3) Defendant's Second Motion to Deny Class Certification. These are addressed *infra* at p. 559.

Irving, Texas and offices in Virginia Beach, Virginia.

The alleged facts pertaining to the "churning" scheme are as follows: [3]

Charlie Falk's Auto Wholesale ("Falk") sold cars to customers at inflated prices, financed the purchases, and took security interests in the cars.[4] Falk then assigned the secured notes to TranSouth.[5] The assignments included a promise by Falk to repurchase the notes for a fixed price if the borrowers defaulted on the loans.

If a borrower missed a payment, Tran-South repossessed the vehicle and mailed a "Notice of Private Sale" to the borrower. The notice informed the borrower that the car would be sold privately if it was not redeemed. The plaintiffs allege that these notices fraudulently suggested to the borrowers that TranSouth would dispose of the vehicles through legitimate private sales. The Court of Appeals noted that legitimate, private sales under Virginia law never took place. *See Chisolm I*, 95 F.3d at 334, n. 3. When a car was not redeemed by a borrower, Falk would buy back the note from Tran-South.[6] TranSouth would subsequently transfer the car to Falk.

Falk would then assign the note to JB Collection Corporation ("JB"), Falk's subsidiary. JB would demand payment for the deficiency. While JB tried to collect the deficiency from the borrower, Falk would attempt to resell the car. The original borrowers were never informed of subsequent sales, and the subsequent sales were never credited to the borrowers' deficiencies.

The plaintiffs allege that TranSouth conspired with Falk and JB to violate the customers' rights with this scheme.

## II. PROCEDURAL HISTORY

Plaintiffs sued TranSouth for violating the Racketeer Influenced and Corrupt Organizations Act (RICO). Defendant filed a motion to dismiss the complaint. Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court referred the matter to the United States Magistrate Judge for a Report and Recommendation. The United States District Court for the Eastern District of Virginia adopted the findings and recommendations of the United States Magistrate Judge and granted Defendant's motion. *See* 851 F.Supp. 739.

The plaintiffs filed a motion to amend the complaint. The District Court denied the motion and Plaintiffs appealed. The Court of Appeals held that: (1) the car purchasers adequately alleged injury and proximate cause in their RICO claim; (2) Plaintiffs failed to allege reliance, and, thus, the complaint was properly dismissed; but (3) the trial court abused its discretion in refusing to allow the plaintiffs to amend the complaint. The Court of Appeals held that in order for the plaintiffs to properly plead RICO mail fraud, they would have to allege that they relied on the TranSouth mailing.[7] The Court stated that in order to plead reliance the plaintiffs need only allege that they relied on the mailings to assure them that the liquidation of the collateral was proceeding legally and legitimately.[8] *Chisolm I*, 95 F.3d at

---

3. The summary concisely restates the facts examined by the Fourth Circuit in previous Opinions in this action. *See Chisolm v. TranSouth Financial Corp.*, 95 F.3d 331 (4th Cir.1996); 164 F.3d 623 (4th Cir.1998) (UNPUBLISHED).

4. Charlie Falk's Auto Wholesale sold used cars to the public at prices characterized by the plaintiff as being "extravagantly high" and also allegedly set interest rates as high as 36%. Falk was initially a defendant. He settled with the plaintiff class.

5. TranSouth then: (1) financed the transactions; and, (2) allegedly placed collision insurance on more than the value of the car at unconscionably high rates which enabled kickbacks through the insurance premiums.

6. No check or reimbursement was sent from Falk to TranSouth; instead, the agreed-upon dollar figure was used to establish the "difference" that the defaulting customer had to pay between the amount owed at the time of the default and that of the transaction between Falk and Tran-South.

7. A claim under RICO requires both damage and reliance proximately caused by the violation. *See Caviness v. Derand Resources Corp.*, 983 F.2d 1295, 1305.

8. This was necessary for Plaintiffs to proceed on the theory that Defendant mailed notices to assure them that the liquidation of their collateral was proceeding legally and legitimately thus influencing them to accept the Defendant's actions

338–39. Since the complaint did not properly plead the requisites of a RICO claim, the Court remanded the case with the instruction that the plaintiffs be given an opportunity to plead reliance. Accordingly, the opinion was vacated and remanded.

Upon remand, the plaintiffs filed an amended complaint, which they argued alleged reliance. TranSouth, disagreeing, moved to dismiss the third amended complaint based on the plaintiffs' failure to allege reliance with the particularity required under Federal Rule of Civil Procedure 9(b). The district court dismissed the complaint and denied the plaintiffs the opportunity to submit another amended complaint. The Court of Appeals reversed.

On January 30, 1997, the Plaintiffs filed a Motion for Certification of the Class. The United States Magistrate Judge originally granted Defendant's motion to dismiss. Magistrate Judge Prince then denied the January 30, 1997 class certification motion as moot without reaching the merits of certification. The Court of Appeals reversed and remanded the dismissal by the Court. A week later, TranSouth filed, without leave of the Court, the supplemental memorandum requesting that the Court rule on the motion for class certification and deny it.

On November 4, 1998, Plaintiff submitted to the Court a Motion to Strike Defendant's supplemental memorandum in support of the motion to deny class certification.[9] The same day, Defendant filed a Second Motion to Deny Class Certification. The defendant filed its response to Plaintiffs' Motion to Strike on November 5, 1998 along with a Memorandum in Support of its Second Motion to Deny Class Certification. On November 17, 1998, Plaintiffs filed a Motion to Stay Defendant's Second Motion to Deny Class Certification. Defendant responded on November 30, 1998.[10] Plaintiffs filed a Supplemental Memorandum in Support of Renewed Motion for Class Certification on December 31, 1998.

On January 5, 1999, the Court held a hearing on TranSouth's motions for protective order and the motions pertaining to class certification. The Court denied the motions for protective order, directed counsel to continue discovery, and took the motions pertaining to class certification under advisement. The motion for class certification is now ripe for decision.

### III. LEGAL STANDARD

■ In order to certify a suit as a class action, the proponent of class certification has the burden of establishing that the conditions enumerated in Rule 23 of the Federal Rules of Civil Procedure have been met. *Windham v. American Brands, Inc.,* 565

without question and depriving them of a meritorious defense to the collection of deficiency payments by JB. *See Chisolm I,* 95 F.3d at 338.

9. Based on the facts, the Court finds the Motion moot. Procedurally, the supplemental memorandum was never filed. Pursuant to *Local Rule* 7(E)(1), the Clerks did not docket the Supplemental Memorandum as part of the record. With respect to substantive analysis, Judge Prince originally denied the pending motion based on the following logic:

Plaintiffs conceded at [the] hearing that if Defendant's motion to dismiss their Third Amended Petition were [sic] granted, plaintiffs' motion for class certification would become moot. This Court, in a Report and Recommendation filed simultaneously with this Order, has recommended that defendant's motion to dismiss be granted. Therefore, plaintiffs' motion for class certification is denied as moot. [Ord. pp. 1–2]

The Order relied on the premise that the action no longer presented a justiciable controversy and the certification issue had become, therefore, academic or dead.

Nonetheless, the Court of Appeals reversed and remanded the Order. As the Magistrate's Order was not grounded in the merits of the motion for class certification, this Court finds the class certification motion has been revived.

10. Having heard extensive oral argument, the Court finds that additional discovery and scheduling are not necessary for determination of the issues presented in the Motion to Deny Class Certification. Plaintiffs' subsequent filing of the Supplemental Memorandum in Support of Renewed Motion for Class Certification on December 31, 1998 largely makes moot their previous contention. They had argued that filing an Opposition to the Second Motion or Plaintiffs' own Motion for Certification prior to a pre-trial conference would prejudice Plaintiffs and force them to brief discovery without the benefit of additional discovery critical to the Court's disposition of the issue. The Court does not find that the filed pleading prejudiced Plaintiffs in any manner.

F.2d 59, 64 n. 6 (4th Cir.1977) (en banc) *cert. denied,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978). Rule 23 provides, in pertinent part: [11]

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23.

 Whether the proponent of certification has met his or her burden is left to the trial court's discretion and will be reversed only for abuse. *Windham,* 565 F.2d. at 65. The Court must conduct a "rigorous analysis" to satisfy itself that the requirements of Rule 23 have been met. *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The Court is prohibited, however, from conducting a preliminary inquiry into the merits of the suit in making this determination. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

In brief, Rule 23(a) of the Federal Rules of Civil Procedure allows a class action when: (1) the class is so numerous that joinder of all members is impracticable; (2) there exist questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the entire class. Fed. R.Civ.P. 23(a). In addition, Rule 23(b) instructs the Court to determine whether questions of law or fact common to the members of the class "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

The following analysis addresses each class action requisite in turn.

### III. ANALYSIS

### A. NUMEROSITY

In "An Overview of Federal Class Actions: Past, Present and Future," Federal Judicial Center Education & Training Series, (2d Ed.1977) at 22, Professor Arthur Miller conducted an exhaustive review of the cases on the numerosity requirement under Rule 23. His conclusion was that:

---

**11.** A proponent of class certification must meet all of the requirements of Rule 23(a), and satisfy one of the subsections of Rule 23(b). Plaintiff has moved for class certification pursuant to 23(b)(3).

If the class has more than forty people in it, numerosity is satisfied; if the class has less than twenty-five people in it, numerosity probably is lacking; if the class has between twenty-five and forty, there is no automatic rule and other factors, discussed below, become relevant.

It is well settled that one or two will not meet the numerosity test. *See Doctor v. Seaboard Coast Line R. Co.*, 540 F.2d 699 (4th Cir.1976).

■ Here, the first issue pertinent to this motion is whether the proposed class is so numerous that joinder of all members is impracticable. The Court of Appeals will not reverse a district court's finding that joinder is practicable absent an abuse of discretion. *In re A.H. Robins Co.*, 880 F.2d 709, 728–29 (4th Cir.), *cert. denied*, 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989). Moreover, the "[p]racticability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986).

■ Neither party disputes that there are at least 2500 putative class members with claims against the defendant. The group offered as a class is too large for the prospect of the active participation of each member to be practical. Moreover, the difficulty and inconvenience inherent in joining all members of the class is apparent. Accordingly, the Court finds that Plaintiffs meet the Rule 23(a)(1) numerosity requirement.

## B. COMMONALITY

Here, the defendant has merged the issues of "commonality," "typicality," and adequate representation in its argumentation. As for the "commonality" requirement, the issue is whether the group of 2500 individuals share questions of law and fact in common such that class-wide adjudication would be appropriate.

Defendant makes the argument that Plaintiffs cannot satisfy the requirements of Federal Rule of Civil Procedure 23 because each class member faces the burden of proving that he or she relied on defendant's representations. Defendant argued at the hearing that the following factors may be significant with respect to each individual plaintiff's reliance: 1) who mailed the Notices, 2) when they were received by each Plaintiff class member,[12] and 3) reasons why each plaintiff considered the action fraudulent. Defendant argues that it is not alleged that each member of the class received the Notices. It also argues that it is entitled to cross examine each class member in order to ascertain what each did or did not do in reliance on receipt of the Notice. In sum, Defendant argues that class action treatment is not appropriate in light of its due process rights because many or most of the class members are not victims of default, damages as to each member is different, different forms of "Notice of Private Sale" were sent, not all plaintiffs had forced place insurance placed on their accounts [13] and each plaintiff would not have been in the position to contest the process had he or she ascertained that it was fraudulent. Accordingly, Defendant contends that proof of individualized reliance is incongruous with the requisites of commonality, typicality and adequate representation. In making its argument, Defendant relies on *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 334, for the proposition that where there are individualized issues of reliance, plaintiffs fail to meet the commonality and typicality requirements of Rule 23(a)(2) and (3).

Plaintiffs' argument at the hearing was that their burden with respect to proving reliance would be met if they demonstrated the following four things in mini-trials: 1) each individual member received the Notice;

---

**12.** The Court notes that Defendant has not argued that there should be an individualized inquiry into the tolling of the statute of limitations.

**13.** Plaintiffs stated at the hearing that they knew little about the factual circumstances surrounding forced place insurance. The knowledge they had was, as characterized by counsel for Plaintiffs, the result of a "falling out among thieves." Falk apparently came forward with information that prompted the plaintiffs to file discovery requests.

2) each read the Notice; 3) from the Notice, he or she got the impression that everything was proceeding legally; and, 4) had each plaintiff known of the churning scheme, he or she would have tried to do something about it.

Plaintiffs further assert that an older state court case with facts nearly identical to those in the instant matter, *Miles v. NJ Motors*, 32 Ohio App.2d 350, 291 N.E.2d 758 (1972), supports their arguments for class certification. The class action in Miles was brought by automobile credit purchasers against an automobile seller and its agents. The class members sought recovery for alleged fraudulent commercial practices and constitutional violations. In that case, the Court of Appeals for Lucas County held that the action was maintainable as a class action because the legal issues flowed from a common nucleus of operative facts, consisting of the purportedly fraudulent commercial practices of the defendants and including constitutional questions common to all group members.

Plaintiffs address Defendant's claims grounded in *Broussard* by arguing that that case is factually distinct from the instant action. Specifically, Plaintiffs allege that *Broussard* involved numerous, non-standardized documents and oral misrepresentations. Consequently, the issue of establishing individual reliance was more complex than in this case. *Broussard* also did not have bifurcated proceedings, or mini-trials, as suggested by Plaintiffs in the instant action.[14]

The Court finds the facts of the instant case distinguishable from those of *Broussard*. There, ten franchise owners sued the franchisor, its in-house advertising agency, its officers and corporate parents. The Court of Appeals in that case found conflicts of interest among the plaintiffs to be one obstacle to class certification. See 155 F.3d 331, 338. The Court also found that the alleged misrepresentations and obfuscations differed from plaintiff to plaintiff and that the trial court's analysis of equitable tolling

should have involved individualized inquiry. *Id.* at 342. Finally, the Court found that each class member's claim for lost profit damages presented "unique circumstances pertinent to each class member." The Court concluded that

> The class the district class certified was thus no more than "a hodgepodge of factually as well as legally different plaintiffs," *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 632 (3d Cir.1996), *aff'd*, *Amchem, supra*, that should not have been cobbled together for trial: franchisees' contractual rights and obligations differ; Meineke directed different representations to different franchisees; franchisees relied on these representations in a different manner or to a different degree; each franchisee's entitlement to toll the statute of limitations is fact-dependent; and the profits lost by franchisees also differed according to their individual business circumstances. Plaintiffs do not "advance the same factual and legal arguments" as the class they are supposed to represent. And frankly, in these circumstances, we doubt that any set of claims is common to or typical of this class. *Mace*, 109 F.3d at 341.

155 F.3d 331, 343.

■ In contrast, the allegations in the instant complaint satisfy the prerequisite of Rule 23(A) that there are questions of law or fact common to the class. Here, the legal injury allegedly sustained by the individual consumers flows in each instance from a common nucleus of operative facts; i.e., the identical allegedly fraudulent commercial practices of the defendant. The questions of law and fact common to the members of the class include: (1) the details of the "churning" scheme and procedures utilized by the defendant in transactions with members of the class; (2) the defendant's violations of RICO resulting from the practice of repossessing collateral and the process of establishing the "deficiency,"; (3) the enforcement of certain illegal terms in the agreements

---

**14.** The plaintiffs suggest bifurcating the trial into two (2) phases:

 i. Phase 1: all common issue, such as whether the language in defendant's uniform notices of sale included false statements, whether defen-

dant and Falk committed conspiracy, and whether defendant's notices of sale violated the UCC, are tried as a single case in a class-wide trial.

 ii. Phase 2: the sole issue of reliance can be tried in a series of very brief mini-trials.

signed by members of the class; (4) the way that JB endeavored to or did collect deficiency payments; and, (5) other legal questions affecting the commercial relations between the defendant and individuals comprising the class. Further, the Court finds that the potential dissimilarities in the remedies and the varying amounts of damages sought by the named plaintiffs do not prohibit a class action because the complaint establishes a common course of conduct giving rise to the legal rights sought to be enforced by the class. *Also see infra* at pp. 565–66.

Defendant argues that Plaintiffs must prove individual reliance and that the reliance factor is not amenable to class-wide proof. The Court declines to find such a bright-line determination, which would in effect preclude class certification in RICO claims. The Court finds that reliance may be made a prerequisite to class membership and is easily ascertainable.

Reliance involves factual questions that qualify each class member's case as a genuine controversy. Determinations of whether putative class members meet the reliance requirement, therefore, may logically preexist trial on a civil RICO fraud action. The Fourth Circuit has held that "prospective Plaintiffs must ... plausibly allege ... that they detrimentally relied in some way on the fraudulent mailing." 95 F.3d 331, 337. Because of Plaintiffs' line of argumentation, the Court of Appeals found that in order for Plaintiffs to allege proximate cause, or reliance, they needed to have been "convinced that the 'private sales' referenced in the Transouth notices were legitimate. Had a [plaintiff's] suspicion been aroused, she might have inquired further or—worse—retained a lawyer to investigate the matter." 95 F.3d at 338. Therefore, the Court found that Plaintiffs needed to "allege that they actually relied on the Transouth mailings to inform them of their rights and to assure them that these rights were being protected." *Id.* This proof was necessitated by Plaintiffs' theory that Defendant did not mail the notices to prevent defaulting borrowers from exercising their redemption rights, but instead to assure them that the liquidation was pro-

ceeding legally and legitimately. *See Id.* at 338.

The facts lead to the logical conclusion that the plaintiffs relied on the defendant's allegedly fraudulent mailing if they made any payments on the "deficiency" amount. The amount itself could only be calculated once a "sale" had been made. The resultant financial information had to be communicated to the defaulting borrower in order for her or him to begin payment. The act of making such payments would adequately demonstrate detrimental reliance. The Court finds that such acts would show that each plaintiff was convinced that the sale had been legal and legitimate. Otherwise, the amount would presumptively have been placed in dispute.

The Court finds that reliance as a predicate to class membership may be established by proof by each Plaintiff of factors such as, but not limited to, the following: 1) each individual member received the Notice; 2) in response, each allowed the automobile to be repossessed; 3) after repossession, each made deficiency payments predicated on his or her understanding that the price on which the deficiency was calculated resulted from a legitimate private sale. As such, Plaintiffs may file individual affidavits to that effect with the Court as a prerequisite to class membership. Defendant then may exercise its right to challenge an individual's membership based on its repossession records and those of JB referencing payments solicited from or made by borrowers. By making reliance a prerequisite to class membership, the plaintiff class meets the commonality requirement.

## C. TYPICALITY

For the same reasons supporting a finding of the commonality of class members, the Court finds that the claims of the representative parties appear typical of the claims of the class. "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard*, 155 F.3d 331, 340 (internal citations omitted). Complete identity between the claims constituting, each indi-

vidual action is not required. *See* Federal Rule of Civil Procedure 23(C)(4)(b).

The "churning" scheme at issue utilized uniform documents and a single cohesive plan through which the plaintiffs all bought the vehicles from Falk and then Defendant financed all of the purchases, repossessed the vehicle from Plaintiffs and then mailed a "Notice of Private Sale" to each. Here, the alleged uniformity of the scheme supports the finding that the claims of the named plaintiffs would be typical of the class members.

## D. ADEQUATE REPRESENTATION

■ The fourth prong of Rule 23(a) analysis is whether the representative parties will fairly and adequately protect the interests of the class. The adequacy-of-representation requirement "tend[s] to merge" with the commonality and typicality criteria of Rule 23(a), which "serve as guideposts for determining whether ... maintenance of a class action is economical and whether the named plaintiffs claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157, n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740, (1982). As previously discussed, the uniform documents and established "churning" scheme create a factual context where the class claims are so interrelated that the interests of the class members will be fairly and adequately protected by the named representatives.

## E. PREDOMINANCE

The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *See* 7A Wright, Miller, & Kane 518–519.

In *Amchem Products v. Windsor,* the Court addressed the requirement of Rule 23(b)(3) that "[common] questions of law or fact ... predominate over any questions affecting only individual members." 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689. The District Court had concluded that predominance was satisfied based on two factors:

class members' shared experience of asbestos exposure and their common "interest in receiving prompt and fair compensation for their claims, while minimizing the risks and transaction costs inherent in the asbestos litigation process." 157 F.R.D. at 316. The parties also contended that the fairness of a settlement was a common question predominating over disparate legal issues.

The Court of Appeals, however, held that the predominance requirement stated in Rule 23(b)(3) is not met by the factors articulated by the District Court and that their shared experience of asbestos exposure and common interest in compensation was not enough. Further, it held that the benefits that asbestos-exposed persons might gain from the establishment of a grand-scale compensation scheme was a matter fit for legislative consideration and not pertinent to the predominance inquiry.

While the District Court in *Amchem* relied upon the commonality of "the members of the class hav[ing] all been exposed to asbestos products supplied by the defendants," 157 F.R.D., at 316, the Court of Appeals stated that the predominance criterion was far more demanding. *See* 83 F.3d, at 626–627. This was because of the greater number of questions peculiar to the several categories of class members in that case, and to individuals within each category, and the significance of those uncommon questions. In *Amchem,*

"class members were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods. Some class members suffer no physical injury or have only asymptomatic pleural changes, while others suffer from lung cancer, disabling asbestosis, or from mesothelioma.... Each has a different history of cigarette smoking, a factor that complicates the causation inquiry ... The [exposure-only] plaintiffs especially share little in common, either with each other or with the presently injured class members. It is unclear whether they will contract asbestos-related disease and, if so, what disease each will suffer. They will also incur different medical expenses because their monitoring and treatment will depend on singular circum-

stances and individual medical histories." *Id.* at 626.

The Court further stated that no settlement class called to its attention was "as sprawling as this one" and quoted *In re Asbestos Litigation*, 90 F.3d, at 976, n. 8, in stating "that a class action requesting individual damages for members of a global class of asbestos claimants would not satisfy Rule 23 requirements due to the huge number of individuals and their varying medical expenses, smoking histories, and family situations." In contrast, the Court then noted that "predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *See* Adv. Comm. Notes, 28 U.S.C.App., p. 697. The Court acknowledged the need for caution when individual stakes are high and disparities among class members great. It found that class certification in *Amchem* did not follow the counsel of caution. The Court concluded that the overarching dispute about the health consequences of asbestos exposure in that case could not satisfy the Rule 23(b)(3) predominance standard.

 Here, the Court finds that common questions of fact predominate over questions affecting only individual members. Subsection (b)(3) of Rule 23 requires only that the common questions outweigh the individual questions; they need not be dispositive of the entire litigation. *Dolgow v. Anderson*, 43 F.R.D. 472, 490 (E.D.N.Y. 1968), *aff'd* 464 F.2d 437 (2d Cir.1972). The nature of the alleged scheme makes the proposed class sufficiently cohesive to warrant class adjudication. Unlike the particularized and varying health consequences at issue with the *Amchem* plaintiffs, the present class members share many factual similarities. The "churning" scheme utilized uniform documents and a single cohesive plan. The litigation would rely on the same evidence, factual documents and legal issues of conspiracy, enterprise, RICO and Uniform Commercial Code requirements. Importantly, the sole individualized issue of legal import, reliance, will be resolved as a predicate to class. The present plaintiffs are not in a situation where the individual stakes are high and the disparities among class members great. Accordingly, the Court finds

that common questions of law or fact predominate over any questions affecting only individual members.

## F. SUPERIORITY

The final issue in Rule 23(b)(3) analysis is whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The drafters of Rule 23 had "dominantly in mind" the vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all. *See Amchem*, 521 U.S. 591, ——, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689.

Defendant presented a dumbing justification for certification in its argument pertaining to proof of individual reliance: that each Plaintiff may not have been in the position to contest the "churning" scheme had he or she ascertained that it was fraudulent.

 The Court finds that it would be both inefficient and difficult for the 2500 putative class members with individually small claims to sue a large corporation like TranSouth in the absence of a class action. Therefore, a class action is the appropriate and superior method for the fair and efficient adjudication of the controversy.

In considering the superiority of the class action, the Court must consider the manageability component of Rule 23(b)(3)(D). The Court has denied certification in actions because of "the complexity of, and the difficulties connected with, the proof of individual injury and damages" in cases with hundreds or thousands of plaintiffs. *See Windham v. American Brands*, 565 F.2d 59, 67–70 (4th Cir.1977). Here, the reliance issue may also raise manageability concerns.

Even if the Court later finds that a bifurcated trial is necessary, precedent supports Plaintiff's proposal for a bifurcated class action. In *Shetterly*, the Court of Appeals affirmed the decision of the district court that before moving to the question of negligence, strict liability or damages, the Court would first determine whether the Plaintiffs even suffered from asbestosis, whether they inhaled asbestos fibers from Raymark's

products, whether the inhalation was a substantial factor in their illness, and whether each Plaintiff was entitled to any specific damages. The Court found that in a complex tort case such as *Shetterly,* the district court has discretion to bifurcate the trial to ensure that the case is tried in an orderly fashion without confusion to the jury, and the district court did not abuse that discretion in that case. 117 F.3d 776, 782 (4th Cir.1997).

The Advisory Committee's Note accompanying the 1966 amendments of Rule 23, 39 F.R.D. 98, 106, recommends severing issues in order to allow each class to establish, if they can, defendant's liability to the class as a whole, while reserving the proof of individual issues for a later proceeding. The procedure has been utilized by federal courts in class actions where the advantages and economies to be achieved by a single adjudication of common issues recommends class action treatment of those issues. *See Samuel v. University of Pittsburgh,* 538 F.2d 991 (3d Cir.1976); *Bing v. Roadway Express, Inc.,* 485 F.2d 441 (5th Cir.1973); *Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir.1968), *cert. denied* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *See generally* 7A Wright & Miller, Federal Practice & Procedure: Civil § 1790 at 187–88 (1972). Further, *A.H. Robins* and Rule 23(c)(4) make plain that district courts may separate and certify certain issues for class treatment. *A.H. Robins,* 880 F.2d at 728. The Court of Appeals reviews decisions whether to bifurcate a trial for abuse of discretion. *See In re Hutchinson,* 5 F.3d 750, 758 (4th Cir.1993).

The cases Plaintiffs cite demonstrate various ways to manage bifurcated trials with numerous plaintiffs. In *Jenkins v. Raymark Industries, Inc.,* 782 F.2d 468, 471–473, the class jury was to decide all the individual issues of unnamed members in mini-trials of seven to ten plaintiffs.

Like *Jenkins,* many of the cases enable individualized proof of damages. Individualized damage determinations may in some cases present challenges in calculating the amount that each individual is owed. The *Windham* court noted that "where the issue of damages and impact does not lend itself to...mechanical calculation, but requires 'separate mini-trial,(s)' of an overwhelming large number of individual claims, courts have found that the 'staggering problems of logistics' thus created 'make the damage aspect of (the) case predominate,' and render the case unmanageable as a class action." *Id.* at 67 (Internal citations omitted). The Court found in that case that computation of the damages would be a "complex, highly individualized task, imposing an intolerable burden on the judicial system" and relied on the conservative estimate of the district court that "in the absence of a practical damage formula, determination of individual damages in [that] case could consume ten years of its time." *Id.* at 70.

Unlike the facts of *Windham,* the present facts suggest that proof of damages will be manageable if the case proceeds as a class action. The Court in *Windham* stated that "in cases where the fact of injury and damage breaks down in what may be characterized as 'virtually a mechanical task,' 'capable of mathematical or formula calculation,' the existence of individualized claims for damages seems to offer no barrier to class certification on grounds of manageability." *Id.* at 67. At the hearing Plaintiffs' counsel argued:

> They have got [sic], apparently, a computer data base where they have already pulled all of this information out. Even if we aren't able to get ahold [sic] of that, if we are able to get their raw computer data and simply get the information of the raw data that's in it, not any opinions they stuck into it, we would be able to get an expert to prepare a spread sheet which would have every single class member, how much they owed, how much they received as a surplus, whether it was zero, whether they were sued, what the deficiency judgment was, and what their damages were, and then a bottom line figure. And the testimony at trial on damages would be our expert explaining who he is, and why he's an expert, and how he looked at accounting records, his detail understanding of accounting, and how he looked at all of these documents and added them up, and here's the number. They would be permitted to cross-examine and say, oh, for this

guy, it was really ... I mean, that's not going to be taking all day. It's going to be a fairly straightforward piece once we have their computer data. [Tr. 40].

Should manageability problems prove intractable, the Court may simply decertify the class. *See In re School Asbestos Litig.*, 789 F.2d 996, 1011 (3d Cir.1986) (finding that "[w]hen, and if, the district court is convinced that the litigation cannot be managed, decertification is proper"). Sixteen to thirty-five percent of America's colleges and universities were potential class members in *Central Wesleyan College v. W.R. Grace & Co.* 6 F.3d 177, 188–90. There, the Court found that "the district court must make certain that manageability and other types of problems do not overwhelm the advantages of conditional certification. When such concerns render the class mechanism ineffective, the district court must be prepared to use its considerable discretion to decertify the class, see 7B Wright, Miller & Kane, *Federal Practice and Procedure* § 1785, at 128–36 (1986), either on a defendant's motion, *see In re School Asbestos Litig.*, 921 F.2d 1338, 1341 (3d Cir.1990), or *sua sponte, see Gerstle v. Continental Airlines, Inc.*, 466 F.2d 1374, 1377 (10th Cir.1972)." *Id.*

The Court is well apprised of its options and finds that damage and reliance determinations are manageable. Moreover, they may be addressed in the subject class action without bifurcating the proceedings. Any difficulties likely to be encountered should not preclude certification of the class.

### V. CONCLUSION

For the aforementioned reasons, the Court **GRANTS** the Motion for Class Certification. The Court **ORDERS** certified the following class:

All persons who purchased cars from Charlie Falk's Auto Wholesale, Inc., entered into Security Agreements with Charlie Falk's Auto Wholesale, Inc. to finance such purchases, whose loans were assigned by Charlie Falk's Auto Wholesale, Inc. to TranSouth Financial Corporation, and who defaulted on their loans and did not redeem their cars after repossession by TranSouth and/or Charlie Falk's Auto Wholesale, Inc.

Plaintiffs' Motion to Strike and Plaintiffs' Motion to Stay Defendant's Second Motion to Deny Class Certification are **MOOT**. Defendant's Second Motion to Deny Class Certification is **DENIED**.

The Clerk is DIRECTED to send a copy of this order to counsel for the plaintiffs, F. Paul Bland, Trial Lawyers for Public Justice, P.C., 1717 Massachusetts Avenue, N.W., Suite 800, Washington, DC 20036, and counsel for the defendant, Gregory N. Stillman, Hunton & Williams, Crestar Bank Building, 500 East Main Street, Suite 1000, Norfolk, VA 23514–3889.

IT IS SO **ORDERED**.