Wendell M. **MULLIGAN** and Malzone M. **Russell,** on behalf of themselves and the class they seek to represent comprised of others similarly situated, Plaintiffs,

v.

**SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION,** Defendant.

C.A. No. 9:04–22767–PMD–GCK.

United States District Court, D. South Carolina, Beaufort Division.

July 19, 2006.

William B. Harvey, III, Harvey and Battey, Beaufort, SC, for Plaintiffs.

Vance J. Bettis, Gignilliat Savitz and Bettis LLP, Columbia, SC, for Defendant.

### ORDER

PATRICK MICHAEL DUFFY, District Judge.

This is an action by Plaintiffs Wendell Mulligan and Malzone Russell seeking declaratory and injunctive relief against their employer, the South Carolina Department of Transportation ("SCDOT" or "Defendant") for race discrimination in the terms, conditions, and privileges of their employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* This matter is currently before the court on Plaintiffs' motion for class certification. Plaintiffs are both African–American engineers employed by Defendant. Plaintiffs seek to represent the class of all current and former (within the applicable statute of limitations) African–American engineers of any classification employed by the Defendant, as well as African American engineers of any classification who have applied for employment with the Defendant.

### BACKGROUND

The facts offered in support of the claims of the two putative class representatives are as follows:

**Wendell Mulligan**

Plaintiff Wendell Mulligan is an African–American employed by Defendant SCDOT as an Engineer/Associate Engineer III, Band 7, with over 21 years of continuous employment with the Maintenance Department of District 6 of SCDOT. Mulligan has a bachelor's of science degree in civil engineering from the University of South Carolina. Mulligan is certified as an Engineer in Training ("EIT").

On July 23, 2001, SCDOT posted a Form HR–24 Vacancy Notice for an Engineer/Associate Engineer III position for a resident construction engineer in Beaufort County. The State of South Carolina Minimum Training and Experience Requirements for this job posting were "a bachelor's degree in engineering or engineering technology and journey-level engineering work experience. A master's degree in engineering and entry-level engineering work experience may be substituted for the required experience." (Pl.Ex.1.) SCDOT posted these additional requirements with the job listing:

A bachelor's degree in engineering and four years of related work experience; or a bachelor's degree in engineering technology and six years related work experience; or an associate's degree in engineering technology and eight years of related work experience; or a high school diploma and ten years of related work experience; *or an acceptable equivalent.*

A valid South Carolina motor vehicle operator's license.

EIT certification.

(Pl.Ex. 1)

Plaintiff Mulligan applied for this position as a resident construction engineer. He was qualified as he had an B.S. degree in civil engineering, was EIT certified, had been with the department for 19 years, and had been the Resident Construction Engineer for Beaufort County for a period of five years. Garvin Moeller, a white male who has never been a resident construction engineer, also applied for the position. Mr. Moeller had a high school education, was not EIT certified, did not have the requisite ten years of work experience, and did not submit a resume. SCDOT interviewed both Mr. Moeller and Mr. Mulligan for the position. Despite the fact that Mr. Moeller did not meet the minimum written qualifications specified,

SCDOT determined that he had an acceptable equivalent of training and work experience to qualify him for the job and offered him the position.

Mr. Mulligan immediately complained that he was imminently more qualified for this position than Garvin Moeller. Responding to this complaint, SCDOT cancelled the position and instead "slotted" Mr. Moeller as a "special projects" construction engineer to work on the Broad River Bridge Project in Beaufort County. This "special projects" position is different from the "cancelled" Resident Construction Engineer position in name only.

Mr. Mulligan filed a race discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"), asserting that despite the vast difference in education, experience, certification, and training, SCDOT was paying Garvin Moeller a higher salary that he received. Mr. Mulligan received his determination of "no cause" and right to sue from the State Human Affairs Commission on July 22, 2004. This action followed.

**Malzone Russell**

Malzone Russell is an African–American male employed by Defendant SCDOT as an Engineer/Associate Engineer III, Band 7, with over ten years of employment experience. He has a bachelor's of science degree in civil engineering technology and is currently the Resident Maintenance Engineer for Jasper County.

In January of 2005, SCDOT posted a Form HR–24 Vacancy Notice for the position of Assistant District Mechanical Engineer for District 6. The State Minimum Training and Experience Requirements were a "bachelor's degree in engineering or engineering technology and journey-level engineering work experience. A master's degree and entry-level engineering work experience may be substituted for the required experience." (Pl.Ex.5.) Addi-

tionally, SCDOT listed as additional requirements, "a bachelor's degree in engineering and four years of related work experience; or a bachelor's degree in engineering technology and six years of related work; *or an approved acceptable equivalent.*" (Pl.Ex. 5.)

Of the seven candidates interviewed for the Assistant Mechanical Engineer position, two were black males. Mr. Russell was the only black male candidate who had a B.S. degree in civil engineering, the other black candidate had an associate's degree in electronics.

SCDOT chose Michael Simpson for the position. Mr. Simpson, a white candidate, had only a high school degree and no mechanical engineering education or experience. He had no college education and did not submit a resume. Prior to applying for the position, Mr. Simpson was the Resident Maintenance Engineer for Colleton County. Both Mr. Simpson and Mr. Russell had been working for SCDOT for a comparable number of years. Even though Mr. Simpson clearly did not meet the listed engineering requirement for the position, the SCDOT "took under consideration his high school diploma and his years of experience working in the area of maintenance" to determine that he had an "acceptable equivalent" to these requirements. (Rivers depo. at 14.)

Mr. Russell filed a discrimination charge with the South Carolina Human Affairs Commission, claiming race and retaliatory discrimination. He received a finding of "no cause" based on pending court proceedings. On August 14, 2002, Mr. Russell also filed a charge of race discrimination against SCDOT with the EEOC, alleging disparate treatment on account of race in compensation, financial promotion, and pay equity. In a determination dated Febru-

ary 16, 2005, the United States EEOC stated that:

> [T]here is reasonable cause to believe that respondent discriminated against Charging Party in the terms and conditions of his employment by denying him a salary increase because of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, and in retaliation for complaining about employment practices made unlawful by the statute.

(Pl.Ex. 6.) In a further notice, dated March 15, 2005, the EEOC found that the Defendant had failed to conciliate as required by Title VII. (Pl.Ex. 7.)

**Statement of the Case**

Plaintiffs Mulligan and Russell claim that the SCDOT's use of the "acceptable equivalent" standard in hiring and promoting constitutes an undisciplined system of subjective decisionmaking, creating and perpetuating racial discrimination in the hiring and promotion of African–American engineers.[1] They assert that SCDOT managers throughout the department apply this exception to general employment requirements in order to hire or promote favored white engineering candidates over superiorly educated and qualified African–American candidates. As such, they assert that their claim of disparate impact in hiring and promotion[2] is common and typical of the claims that could be asserted by a class of all African–American engineers who work for, or have applied to work for, SCDOT.

■ When making a claim of adverse impact due to subjective decisionmaking, the plaintiff must begin by identifying the specific employment practice that is challenged. *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 994, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). Especially in cases where an employer combines subjective criteria with the use of more rigid standardized rules or tests, the plaintiff is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities. *Id.* Once the employment practice at issue has been identified, causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group. *Id.* The federal courts' formulations, which have never been framed in terms of any rigid mathematical formula,

---

1. Plaintiffs further assert that SCDOT's Human Resources Department relies upon an outdated EEO goals form, based upon 1990 census data, that inaccurately describes the available qualified labor pool of minority candidates. The court does not consider this evidence, however, as it is well established that Title VII does not require an employer to have an affirmative action plan. Thus, such evidence of failure to use appropriate EEO goals is irrelevant to Plaintiffs' Title VII claim.

2. In their complaint, Plaintiffs broadly assert a claim of "disparate impact *and* disparate treatment of Plaintiffs and the class they seek to represent." (Complaint ¶ 8.) In their motion for class certification, however, Plaintiffs only assert that the putative class shares claims of *disparate impact* discrimination.

The court assumes that Plaintiffs do not pursue the disparate treatment claim because certifying a class under a theory of disparate treatment, which requires a showing of an employer's specific intent to discriminate against an entire group, is difficult. *Stastny v. Southern Bell Tel. & Tel. Co.,* 628 F.2d 267, 274 n. 10 (4th Cir.1980). It is well established that the commonality requirement is more easily met in a disparate impact theory case rather than a disparate treatment case. *Id.*

Regardless of the reason, because Plaintiffs only assert that class certification is appropriate under the disparate impact theory of discrimination under Title VII, the court only considers this claim.

have consistently stressed that statistical disparities must be sufficiently substantial that they raise such an inference of causation. *Id.*

In support of its claim that SCDOT hiring and promotion policy constitutes subjective decisionmaking, Plaintiffs present anecdotal evidence of seven other instances in which SCDOT relied upon the "acceptable equivalent" standard to hire a white person who was not the most highly qualified candidate.[3] In some instances, SCDOT hired a white candidate who did not even meet the listed education and experience requirements for the position, while denying to even grant an interview to a qualified African–American candidate.[4] Such an allegation is sufficient to identify the specific employment practice that is challenged.

Plaintiffs then present the statistical evaluation of Dr. Lynn McFarland, a Ph.D. in psychology. Dr. McFarland's report finds that the SCDOT selection procedure discriminates against African–American applicants. To make this finding, Dr. McFarland calculated the adverse impact ratios (AIRs) by "dividing the number of Blacks who were hired for the job in question by the number of Blacks who applied for the job. This ratio is then divided by the ratio obtained by dividing the number of Whites who were hired for the job by the number of Whites who applied for the job." (Pl.Ex. 15 at 5.) Generally, where a hiring rate for a minority is less than 80 percent, adverse impact exists. According to Dr. McFarland's calculations, "the [SCDOT] hiring rates of Blacks is less than 40% the hiring rate of Whites across the 7 districts for the years provided." (Pl.Ex. 15 at 5.) If admissible, this statistical evidence is "of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson*, 487 U.S. at 994–995, 108 S.Ct. 2777.

Without considering the merits of the claim, the court finds that Plaintiffs have successfully asserted a disparate impact claim under Title VII, based on the subjective decisionmaking of SCDOT in its hiring and promotion policies.[5] Conceptually,

3. Plaintiffs describe the similar experiences of Donatien Mulamba, Ben James, Herbert Latten, Arnold Blanding, and Thomas Guest, all African–American engineers.

4. Plaintiffs also cite several instances in which SCDOT cancelled open positions where the only qualified applicants were African–American males

5. SCDOT, relying on *Lott v. Westinghouse*, 200 F.R.D. 539 (D.S.C.2000), asserts that Plaintiffs' claims are disparate treatment claims masquerading as disparate impact claims. In *Lott*, the plaintiffs made a claim of disparate impact due to a "general policy of discrimination" which "manifested itself in hiring and promotion ... through entirely subjective decisionmaking processes." *Id.* (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157–58, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). The court, noting that a claim of

"subjective decisionmaking" necessarily requires an inquiry into "the intervening conscious decisions of a multitude of diverse managers and supervisors," held that "[i]t is the participation and conscious expression of choice by those managers and supervisors which renders this case distinguishable from the classic disparate impact case specifics of each act of discrimination, **it cannot be the basis of a disparate impact claim.**" *Lott*, 200 F.R.D. at 539.

The court declines to adopt the *Lott* Court's rationale, finding instead that a claim of subjective decisionmaking may be the basis of a disparate impact claim. As the Supreme Court in *Watson v. Fort Worth Bank & Trust* advised:

If an employer's undisciplined system of subjective decisionmaking has precisely the same effects as a system pervaded by impermissible intentional discrimination, it is difficult to see why Title VII's proscription

however, "there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims." *Falcon*, 457 U.S. at 157–58, 102 S.Ct. 2364.

## STANDARD OF REVIEW

■ Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. Plaintiff carries the burden of establishing each of the requirements for a class action are satisfied. *In re A.H. Robins Co.*, 880 F.2d 709, 728 (4th Cir.), *cert. denied*, 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989); *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 65 n. 6 (4th Cir.1977) (en banc) ("It is well-settled in this jurisdiction that the proponent of class certification has the burden of establishing the right to such certification under Rule 23."); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir.2004) ("The plaintiffs who propose to represent the class bear the burden of demonstrating that the requirements of Rule 23 are satisfied."); *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 146 (4th Cir.2001) ("The

party seeking class certification bears the burden of proof.").

■ At this stage, the class representatives need not establish their case on the merits. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The court need only determine whether the plaintiffs are asserting a claim which, assuming the merits, would satisfy the requirements of Rule 23.[6] *Id.* Questions regarding the certification of a class action are left to the sound discretion of the district court and any such decision by the court will only be reversed upon a showing of abuse of that discretion. *Stott v. Haworth*, 916 F.2d 134 (4th Cir.1990).

## ANALYSIS

■ To be certified, a proposed class must satisfy Rule 23(a) and one of the three sub-parts of Rule 23(b). *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir.2003). Rule 23(a) states that an action may be maintained as a class action if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

---

against discriminatory actions should not apply. In both circumstances, the employer's practices may be said to "adversely affect [an individual's] status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(2). **We conclude, accordingly, that subjective or discretionary employment practices may be analyzed under the disparate impact approach in appropriate cases.** 487 U.S. at 990–991, 108 S.Ct. 2777. Accordingly, without considering the merits of Plaintiffs' claim, the court finds that Plaintiffs have

properly alleged a disparate impact claim based on SCDOT's policy of subjective decisionmaking in hiring and promotion.

6. In its brief in opposition to Plaintiffs' motion to certify a class, SCDOT argues that Plaintiffs have failed to fulfill Title VII procedural requirements. Because a determination on the merits of Plaintiffs' claim would be inappropriate at this stage, the court does not address this argument. Challenges to the merits of Plaintiffs' claims would be more appropriately raised in a motion for summary judgment.

(4) the representative party will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). On the basis of the allegations presented, the court must identify the character or type, but not the merits, of each plaintiff's claim, and then determine if there is a class to which the plaintiff's claim is common to justify class certification. *Doctor v. Seaboard Coast Line R.R. Co.*, 540 F.2d 699, 708–709 (4th Cir.1976).

In the instant case, Plaintiffs allege that the use of the "acceptable equivalence" standard in hiring constitutes a pattern or policy of subjective decisionmaking that causes a disparate impact in the hiring and promotion of African–American engineers. Plaintiffs claim that they, and all African–American engineers either working for SCDOT or who have applied to work for SCDOT, have suffered an injury as a result of this subjective decisionmaking policy. Accordingly, Plaintiffs ask the court to certify this class.

■■ In a disparate impact case, an employment test or policy, neutral on its face and applicable to all employees, impacts adversely on the protected class. Unlike a disparate *treatment* class action, a plaintiff in a disparate impact claim need not prove an employer's specific intent to discriminate against an entire group. It is indisputably true that the class action commonality criteria are, in general, more easily met when a disparate impact rather than a disparate treatment theory underlies a class action. *Lott v. Westinghouse Savannah River Co., Inc.*, 200 F.R.D. 539, 553 (D.S.C.2000). Nonetheless, in *East Texas Motor Freight System Inc. v. Rodriguez*, 431 U.S. 395, 405, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), the Supreme Court effectively repudiated an earlier line of cases that automatically certified an across-the-board class based solely on a complaint alleging group discrimination. As such, it is clear that while "suits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs, ... careful attention to the requirements of Fed. Rule Civ. Proc. 23 remains nonetheless indispensable" to class certification. *See Hartman v. Duffey*, 19 F.3d 1459, 1469 (D.C.Cir. 1994). Courts may not make class certifications in discrimination cases automatically as a mere matter of course on the basis of class allegations in the complaint, nor is the mere invocation of Rule 23's language any "mystical legal talisman guaranteeing class treatment." *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1312 (9th Cir.1977) (cited by *Brooks v. Circuit City Stores, Inc.*, 1996 WL 406684, *3 (D.Md. June 17, 1996)). Instead, courts should grant class certification only after a rigorous analysis of whether Plaintiff and the proposed class have claims in common. *Falcon*, 457 U.S. at 157, 102 S.Ct. 2364; *Hartman*, 19 F.3d at 1469.

■■ The court assumes that Plaintiffs have stated a meritorious disparate impact claim. So assuming, the court considers whether the putative class members share this claim with Plaintiffs. Plaintiffs seek to represent a class of the eighty-nine African–American engineers employed by the SCDOT, as well as "untold numbers of engineer applicants" who have applied for positions with SCDOT. However, there is no evidence that the members of this large class have been adversely affected by SCDOT's subjective hiring policy. The mere allegation that SCDOT has a policy of subjective decisionmaking is insufficient to justify certifying the putative class without evidence that the subjective hiring policy has actually injured members of this class. It is indisputable that the existence of a wrong without some identifiable injury does not provide a basis for redress. *See*

*Adams v. Bethleham Steel Corp.,* 736 F.2d 992 (4th Cir.1984) (denying certification of entire class of black employees without some evidence that all black employees were injured by the policies alleged to be discriminatory). Accordingly, the court finds that Plaintiffs have failed to show that their disparate impact discrimination claim is common to all members of the putative class of African–American engineers employed by or denied employment by SCDOT.[7]

Although Plaintiffs do not seek to certify any other class, the court notes that Plaintiffs could share a common claim with those African–American engineers who sustained injury due to the subjective decisionmaking policy of SCDOT. Specifically, Plaintiffs have common claims with those African–American engineers who show that (1) they applied for a job or promotion with SCDOT, (2) they were denied that job or promotion, and (3) SCDOT relied upon the "acceptable equivalence" hiring standard in giving that job or promotion to a less qualified white candidate. The court has been presented with no evidence regarding the number of persons who meet this criteria. Potentially, only the five African–American engineers described in Plaintiffs' brief share Plaintiffs' asserted cause of action. As such, Plaintiffs have neither alleged nor shown that the class of African–American engineers who have been denied employment or promotion due to the disparate impact of SCDOT's policy of subjective decisionmaking is so numerous that it would be impractical to join them to this action. As such, even if Plaintiffs had described a class of potential claimants, they have not met their burden of establishing the numerosity requirement of Rule 23 for this class.

Because Plaintiffs have failed to prove that they share common claims with the putative class members, and because Plaintiffs present no evidence as to the number of members of the class with which they could have common claims, the court finds that Plaintiffs have failed to establish the requirements for certifying a class.

### CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Plaintiffs Wendell M. Mulligan and Malzone M. Russell's Motion for Class Certification is hereby **DENIED.**

**AND IT IS SO ORDERED.**

---

**7.** As testament to the difficulty of proving a class injured by subjective decisionmaking, only one reported case has certified a subjective decisionmaking class alleging exclusively disparate impact discrimination. *See* Melissa Hart, *Subjective Decisionmaking and Unconscious Discrimination,* 56 Ala. L.Rev. 741, 784 (2005). In that case, *McClain v. Lufkin Indus., Inc.,* 187 F.R.D. 267 (E.D.Tex.1999), the court certified a class that consisted of black employees and former employees who had sustained injury due to disparate impact of employer's policy of granting unfettered discretion to its managerial employees with respect to employee hiring, promotion, termination, discipline or demotion, for purpose of pursuing cause of action to enjoin alleged illegal practices under Title VII and civil rights statute. The *McClain* Court found that the because the "network of employment practices … potentially impacts every African–American employed at Lufkin Industries," certification of the entire class of African–American employees was appropriate. 187 F.R.D. at 280. This court declines to go so far. Given the Fourth Circuit's insistence on some identifiable injury common among class members, the court finds that a common *potential* for injury is insufficient to sustain a class of all employees, regardless of whether the individual employees were injured or not. *See Adams,* 736 F.2d 992.