Lucinda PITT, et al., Plaintiff,

v.

CITY OF PORTSMOUTH, VA, et al., Defendants.

No. CIV.A. 2:02CV489.

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 20, 2004.

Julie Nepveu, Jonathan Pettus Hooks, Thomas J. Henderson, Lawyers' Committee for Civil Rights Under Law, Washington, DC, Charles Everett Malone, Norfolk, VA, Stuart McKinley Paynter, Sullivan & Cromwell LLP, Washington, DC, Philip Cam–Minh Huynh, Donald Stuart Meiklejohn, Matthew Scott Fitzwater, Stacey Rubin Friedman, Sullivan & Cromwell LLP, New York City, Kathleen Benway, David Edwin Jones, John Singleton Skilton, Allyson Baker, Heller Ehrman White & McAuliffe LLP, Washington, DC, Wilfredo Bonilla, Jr., The Law Firm of Charles E. Malone, Norfolk, VA, for plaintiff.

William G. Broaddus, McGuireWoods LLP, Richmond, VA, Robert William McFarland, Bryan Karl Meals, McGuireWoods LLP, Norfolk, VA, George Timothy Oksman, Office of the City Attorney, Portsmouth, VA, Linda S. Laibstain, James A. Gorry, III, Kelly Elizabeth Mofield, Hofheimer Nusbaum PC, Norfolk, VA, Barry Dorans, Samuel Warrenton Meekins, Jr., Wolcott Rivers Wheary Basnight, & Kelly PC, Virginia Beach, VA, Timothy A. Coyle, Donald Charles Schultz, Amy Morrissey Turk, Crenshaw Ware & Martin PLC, Norfolk, VA, Michael W. Dolanm, Kim Hoyt Sperduto, Thomas Stewart Rauch, The Sperduto Law Firm, PLC, Washington, DC, George Van Cleve, Van Cleve & Associates, Washington, DC, Ralph Walling Buxton, Cooper Spong & Davis PC, Portsmouth, VA, for defendants.

Susan Lynn Watt, United States Attorney's Office, Norfolk, VA, Raymond Holmes Strople, Moody Strople & Kloeppel, Ltd., Portsmouth, VA, for interested party.

## MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

Before the Court are the United States Court of Appeals for the Fourth Circuit's ("Fourth Circuit") order remanding the above-captioned case to the Court for reconsideration of class certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure and Defendant Portsmouth Partners of Virginia, LLP's ("PPV") Motion to Decertify or, Alternatively, to Remove PPV as a Class Defendant.[1] The Court has conducted a hearing on the matter and thoroughly reviewed the briefs and supporting memoranda regarding class certification. For the reasons set forth below, PPV's Motion to Decertify or, Alternatively, to Remove PPV as a Class Defendant is **DENIED**.

### I. FACTS AND PROCEDURAL HISTORY

Plaintiffs are former residents of Fairwood Homes, a housing complex built in the 1940's as temporary war housing. Compl. ¶ 37. Fairwood Homes originally consisted of 1500 single-family homes, and is currently owned by defendant Portsmouth Partners of Virginia, L.L.P. ("PPV"). *Id.* Plaintiffs assert that Fairwood Homes and the area surrounding it has remained segregated for several years. Compl. ¶ 179. Plaintiffs believe that the City of Portsmouth ("Portsmouth") and Portsmouth Redevelopment and Housing Association ("PHRA") have not disestablished official segregated housing policies nor have they built or developed affordable housing in non-racially impacted areas. Compl. ¶ 179. Plaintiffs allege that, over the years, Portsmouth has provided fewer municipal services

---

1. The City of Portsmouth, Empowerment 2010, and Portsmouth Redevelopment and Housing Association, the other Defendants in this case, have filed pleadings which share PPV's contention that the class should not be certified. However, PPV is the only defendant to file a formal motion to decertify the class.

to the predominantly African–American Fairwood Homes and surrounding area than it has to predominantly white areas of Portsmouth. Compl. ¶¶ 138–42. In addition, Plaintiffs contend that PPV has discriminated against African–American residents of Fairwood Homes by subjecting them to different treatment in its maintenance of particular units and rental policies, among other things. Compl. ¶¶ 90–92. Plaintiffs allege that poor maintenance and Portsmouth's refusal to allow PPV to redevelop the property caused Fairwood Homes to deteriorate to a condition where continued occupancy was impossible. Compl. ¶ 154.[2] Plaintiffs claim that such conduct amounts to intentional discrimination based on race. Compl. ¶ 141.

Since 1989, the City of Portsmouth ("Portsmouth") has had official plans to purchase and redevelop Fairwood Homes. Compl. ¶ 41. Initially, Portsmouth planned to build a race track on the property. Plaintiffs claim that because of these plans, Portsmouth discouraged and prevented PPV from renovating or otherwise redeveloping Fairwood Homes. Id. However, unable to obtain funding for the race track, Portsmouth began to consider alternative uses for the site and Portsmouth and Portsmouth Redevelopment and Housing Authority ("PHRA") hired a consultant to complete a Market and Feasibility Study for commercial/industrial development of the site. Compl. ¶ 43. Early in the redevelopment planning process, PHRA recommended that, to save money, Portsmouth not offer Fairwood home residents relocation benefits, but rather rely on evic-

tions and turnover to remove residents from complexes.[3] Compl. ¶ 80. Based in part upon PHRA's assessment and recommendation, Plaintiffs conclude and allege that Defendants, acted to "intentionally deprive the residents [of Fairwood Homes] of their Constitutional and statutory rights by displacing them knowing their actions would have a disparate impact on African–Americans, by intentionally excluding them from Portsmouth … and by otherwise making housing unavailable … based on their race." Compl. ¶ 53.

In 1997, Portsmouth and PPV executed a Master Development Agreement. Compl. ¶ 48. The Development Agreement allowed Portsmouth to purchase parcels 1 and 2 of Fairwood Homes immediately and granted Portsmouth options to purchase parcels 3, 4A, and 4B of the Fairwood Homes community at later dates. Id. Plaintiffs allege that "[a]s a result of the 1997 Master Development Agreement and Portsmouth's purchase of the first two parcels of the Fairwood Homes property, approximately 450 resident families, who were predominantly African–American, were evicted from their homes and the property was cleared of all housing units." Compl. ¶ 51. Plaintiffs further claim that the displaced Fairwood Home residents did not receive any relocation benefits. Id.

On or about October 9, 1998, Portsmouth and the City of Norfolk ("Norfolk") submitted a joint application for a federal Empowerment Zone ("EZ") designation for portions of both cities.[4] One of the goals in the

---

2. Plaintiffs assert that Portsmouth failed or refused to take action to ensure that PPV maintained Fairwood Homes up to building code standards. Moreover, Plaintiffs claim that Portsmouth's code inspectors and other city officials have not responded to the numerous complaints they have received from Fairwood Homes residents. Compl. ¶¶ 129, 131–34. Plaintiffs also allege that PRHA, in violation of federal law, allowed Section 8 holders to use vouchers at Fairwood Homes even though the residences did not meet code requirements. Compl. ¶ 120. Further, Plaintiffs allege that PHRA knew of the substandard conditions at Fairwood Homes residents because they inspected the units, yet, PHRA did not require PPV to make necessary repairs. Compl. ¶ 120–21.

3. Portsmouth also analyzed the feasibility of redevelopment and learned that if Fairwood Home residents were forced to move they would not be able to find housing in the Portsmouth area. Compl. ¶¶ 43–45. Further, Plaintiffs allege that PRHA and Portsmouth knew this and they determined that the city could save money if the Fairwood Home residents left Portsmouth because the city would not have to expend as much on municipal services. Compl. ¶ 43.

4. The Empowerment Zone ("EZ") program is a federal, state, and local government partnership whose purpose is to stimulate comprehensive social and economic renewal in fiscally distressed urban and rural areas across the nation. Faulcon Aff. ¶ 2. The federal government provides tax incentives, grants, loans, and technical assistance to EZ areas, also referred to as desig-

application was to "leverage" funds that Portsmouth would receive to further redevelopment plans, including the purchase of Fairwood Homes. Compl. ¶ 58. In 1999, the United States Department of Housing and Urban Development ("HUD") granted the EZ designation for an area that included Fairwood Homes and awarded Norfolk and Portsmouth a $100 million grant for activities and programs within this EZ designation area. Compl. ¶ 56. Empowerment 2010, a non-profit organization, was created and assumed the task of implementing the cities' strategic plan. Compl. ¶ 57.

On May 28, 2002, PPV issued termination notices to all of the remaining residents and completed the eviction proceedings by early October. Compl. ¶¶ 153–59. Plaintiffs have been denied relocation benefits or other assistance. Compl. ¶ 51. Plaintiffs allege that PPV and Portsmouth have employed aggressive code enforcement in order to evict residents and redevelop Fairwood Homes as envisioned in 1997 Master Agreement and EZ grant agreement, and to deprive those residents of their constitutional and statutory rights. Compl. ¶ 156. Plaintiffs allege that such strict code enforcement was used in order to avoid paying required relocation benefits to evicted residents. Compl. ¶¶ 147–48. In addition, Plaintiffs assert that this code enforcement strategy was simply a pretext for discrimination against Plaintiffs. *Id.* Plaintiffs further contend that because of a lack of adequate, affordable housing in Portsmouth, Plaintiffs will likely be removed from Portsmouth altogether. Compl. ¶ 43–45.

Plaintiffs filed their complaint on June 27, 2002. Initially, Plaintiffs' Complaint consisted of eight counts alleging violations of the following: (1) Fair Housing Act ("FHA") (2) Uniform Relocation Act ("URA") (3) Housing and Community Development Act ("HCDA") (4) Virginia Relocation Act ("VA Relocation Act")[5] (5) The Thirteenth Amendment (6) The Fourteenth Amendment (7) Title VI of the Civil Rights Act of 1964 ("Title VI") and (8) Virginia Code § 55–222.[6] On June 6, 2003, Plaintiffs moved for class certification pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, with a notice to opt out, akin to that provided by 23(b)(3) or, alternatively, pursuant to 23(b)(2) with the exception of compensatory damages, which they asserted should be certified under 23(b)(3). In the following weeks, Defendants filed briefs and supporting memoranda in opposition to Plaintiffs' motion for class certification. On September 4, 2003, after careful review of parties' motions and related memoranda, the Court entered a Memorandum Opinion and Order certifying a class consisting of "[a]ll former residents of Fairwood Homes who resided at Fairwood Homes at any time since September 28, 1999." Defendants, pursuant to Rule 23(f) of the Federal Rules of Civil Procedure, petitioned the Fourth Circuit for interlocutory appeal of the class certification. On October 21, 2003 the Fourth Circuit granted permission to appeal and remanded the case for reconsideration "with directions to the Court to reconsider class certification on the Uniform Relocation Act claim under the provisions of Rule 23(b)(3)." On November 19, 2003, Defendant PPV filed a Motion to Decertify the Class or,

---

nations, that use federal assistance to leverage private investment opportunities. *Id.* ¶ 3. HUD approved Norfolk and Portsmouth's joint application for an EZ designation in early 1999. On September 28, 1999, HUD, the Commonwealth of Virginia, and the cities of Norfolk and Portsmouth executed a Grant Agreement and the cities received funds in the amount of $3 million dollars. *See* Grant Agreement. Following that agreement, Congress authorized additional amounts for the Norfolk/Portsmouth EZ designation. Ruggiero Aff. ¶ 4. However, the cities have not received these additional funds because, according to Plaintiffs' allegations, HUD has failed to fully execute the 1999 amendment to the Grant Agreement that authorizes release of those additional funds. *Id.*

5. In their Complaint, Plaintiffs cite the Virginia Relocation Act as VA Code §§ 25–236—25–254 (2001). The Court presumes plaintiffs' are referring to the Relocation Assistance and Real Property Acquisition Policies, for which the proper citation is Va. Code Ann. § 25.1–406–25.1–416 (2003) (the relocation assistance provisions). THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION 238 tbl. T.1 (Columbia Law Review Ass'n et al. eds. 17th ed. 1st prtg.2000). On January 16, 2004, the parties provided the Court with a fully endorsed order to dismiss this count and the Court entered the order.

6. The Court concluded that Count VIII was moot in a March 31, 2003 order.

Alternatively, to remove PPV as a Class Defendant. During the hearing the Court held on December 1, 2003, the Court asked that the parties to submit briefs on the class certification issues. The Court then held a hearing on the class certification issues on December 19, 2003. Since the hearing, parties have filed additional pleadings regarding the question of class certification.[7] The case is now before the Court on the Fourth Circuit's order remanding the case for reconsideration of class certification on the URA claim and on Defendant PPV's motion to decertify the class.

## II. LEGAL STANDARD

■ "It is well settled in this jurisdiction that the proponent of class certification has the burden of establishing the right to such certification under Rule 23." *Windham v. American Brands, Inc.*, 565 F.2d 59, 64 n. 6 (4th Cir.1977) (en banc) *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978). Although the Court previously determined that the class satisfies the prerequisites outlined in Rule 23(a) of the Federal Rules of Civil Procedure ("Rule 23(a)") and Rule 23(b)(2) of the Federal Rules of Civil Procedure ("Rule 23(b)"), the Court is duty bound to monitor its class decision and, where certification proves improvident, to decertify, subclassify, alter, or otherwise amend its class certification. *See Chisolm v. TranSouth Fin. Corp.*, 184 F.R.D. 556, 567 (E.D.Va.1999). "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Accordingly, the Court will reconsider whether the class continues to meet the requirements outlined in Rule 23(a). Additionally, pursuant to the Fourth Circuit's October 21, 2003 order, the Court will consider whether Plaintiffs' URA claim may be maintained as a class action claim under Rule 23(b)(3) of the Federal Rules of Civil Procedure ("Rule 23(b)(3)"). The Court will also consider, for the first time, whether Plaintiffs' HCDA claim may be maintained as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

To qualify for class certification, the moving party must prove it satisfies all of the elements of Rule 23(a) and one of the subsections of Rule 23(b). FED. R. CIV. P. 23. Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") reads in pertinent part:

(a) One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) An action may be maintained if the prerequisites of subdivision (a) are satisfied, and in addition ... (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties

---

7. On December 24, 2003, Plaintiffs filed a document entitled "Proposed Orders Regarding Class Certification and Statement of Plaintiffs' Class Claims." On January 5, 2004, the Empowerment 2010 filed a motion to strike Plaintiffs Proposed Order and the City filed a memorandum opposing it. The Court will rule on the current motions without consideration of these pleadings. Accordingly, Empowerment 2010's motion to strike is **GRANTED**.

likely to be encountered in the management of a class action.

*Id.*

Whether the proponent of certification has met his or her burden is left to the trial court's discretion and will be reversed only for abuse. *Windham,* 565 F.2d at 65. The Court must conduct a "rigorous analysis" to satisfy itself that the requirements of Rule 23 have been met. *Falcon,* 457 U.S. at 161, 102 S.Ct. 2364 (1982). The Court is prohibited, however, from conducting a preliminary inquiry into the merits of the suit in making this determination. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).[8]

## III. ANALYSIS

Having reviewed the various pleadings in this case, the Court finds it appropriate to amend the class the class it certified in its September 2003 order.

### A. HCDA and URA Claims

To litigate Plaintiffs' claims for the violations of the HCDA and URA, the Court finds the class it previously certified is appropriate. Accordingly, the Court certifies the following class:

All former residents of Fairwood Homes who resided at Fairwood Homes at any time since September 28, 1999.

This class satisfies all of the necessary requirements of Rule 23.

#### 1. Rule 23(a)

Rule 23(a) of the Federal Rules of Civil Procedure requires: (1) the class is so numerous that joinder of all members is impracticable; (2) there exist question the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the entire class. FED. R. CIV. P. 23(a). The Court will address each of Rule 23(a)'s requirements in turn.

#### a. Numerosity

■ In its September 2003 Order, the Court found that, at a minimum, several hundred families left Fairwood Homes because the property closed. From this the Court concluded that the class satisfied Rule 23(a)'s numerosity requirement. Little has changed in this regard since the Court's September 2003 Order nor do Defendants argue that the Court should decertify the class because the class no longer meets the numerosity requirement. Accordingly, the Court will proceed to the other requirements of Rule 23.

#### b. Commonality

■ Rule 23(a)'s commonality prong requires that there is at least one question of law or fact common to the class. *Jeffreys v. Communications Workers of Am.,* 212 F.R.D. 320, 322 (E.D.Va.2003). The fact that some factual variances in individual grievances exist will not defeat the commonality requirement. *Id.* Thus, the proper inquiry for determining commonality is "whether the group of . . . individuals share questions of law and fact in common such that the classwide adjudication would be appropriate." *Chisolm,* 184 F.R.D. at 561 (E.D.Va.1999). Questions regarding the URA and HCDA claims that are common to class members include: (1) Whether an event or activity has triggered URA benefits. (2) Whether the program or project was undertaken by a Federal agency or with Federal financial assistance. (3) Whether Fairwood Homes was low or moderate income housing. (4) Whether Fairwood Homes has been converted to a use other than for housing for low and moderate income persons. (5) Assuming liability, which Defendant[s] are required to pay relo-

---

8. PPV, PHRA, and Empowerment 2010 each argue the Court should not certify a class "against" it because Plaintiffs do not have a viable claim against them. Were the Court to entertain Defendants' arguments, it would have to inquire into the merits of Plaintiffs' case. Quoting *Miller v. Mackey International,* the Supreme Court explained, " '[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' " *Id.* (quoting *Miller v. Mackey International,* 452 F.2d 424, 427 (5th Cir.1971)). Therefore, the Court declines to decertify the class on the basis of these arguments.

cation benefits. Having reviewed these questions and determined they are common to the class, the Court finds that Plaintiffs' HCDA and URA claims satisfy Rule 23(a)'s commonality requirement.

### c. Typicality

■ To satisfy the typicality requirement, the claims of the named class representatives must be typical of those of the class. *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 146 (4th Cir.2001). However, it is not necessary that the claims of the named representatives and those of class members be factually identical. *Chisolm*, 184 F.R.D. at 563. Rather, the named plaintiff must simply "be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart*, 255 F.3d 138 (citing *Falcon*, 457 U.S. at 156, 102 S.Ct. 2364 (1982)). Here, Plaintiffs' claim (1) they are displaced persons within the meaning of the URA and, accordingly, are entitled to relocation benefits and (2) they are entitled to relief under § 5304 of the HCDA. Compl. ¶¶ 188, 191. Plaintiffs claims are precisely the type of claims that all former residents of Fairwood Homes who resided at Fairwood Homes since September 28, 1999 might make. On the URA and HCDA claims, Plaintiffs do not raise any factual or legal questions unique to them. Accordingly, Plaintiffs' URA and HCDA claims satisfy Rule 23(a)'s typicality requirement.

### d. Adequacy of Representation

The final prong of analysis under Rule 23(a) is whether the representative parties "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *Lienhart*, 255 F.3d at 146; *Chisolm*, 184 F.R.D. at 564. The Court determined in its September 2003 Order that Plaintiffs satisfied this prong. Defendants neither contend that Plaintiffs interests in the URA and HCDA claims conflict with the interests of the class nor do Defendants challenge the competency and interests of Plaintiffs' counsel. Therefore, the Court finds that Plaintiffs satisfy all four of Rule 23(a)'s requirements and the Court proceeds to it's 23(b) analysis.

### 2. Rule 23(b)(3)

To satisfy the requirements of Rule 23(b)(3), the class members must share common questions of law and fact with regards to the URA and HCDA claims which predominate over questions affecting only individual members and the class action must be the superior method of adjudication. When determining whether these requirements are met the Court should consider the following factors: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." FED. R. CIV. P. 23(b). The Court will consider each of these factors and Defendants' arguments of these factors seriately.

### a. The Interest of Members of the Class in Individually Controlling the Prosecution

■ The first consideration in the Court's Rule 23(b)(3) analysis is "the interest of members of the class in individually controlling the prosecution or defense of separate actions." Explaining this prong of Rule 23(b)(3), the Supreme Court stated in *Amchem Products, Inc. v. Windsor*, "the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" 521 U.S. 591, 616–17, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting Kaplan, A Prefatory Note, 10 B.C. Ind. & Com. L.Rev. 497, 497 (1969)). "The most compelling rationale for finding superiority in a class action [is] the existence of a negative value suit." *Castano v. American Tobacco Co.*, 84 F.3d 734, 748 (5th Cir.1996). Here, the class consists largely of low income persons who are without the means to pursue these claims. Furthermore, even assuming Plaintiffs were financially able to litigate their individual claims, there is little econom-

ic incentive to do so given the benefit caps contained in the URA and HCDA.[9] Therefore, the Court finds a class action is the superior method of adjudicating class members' interests.[10]

### b. Litigation already in progress

■ The second factor in the Court's Rule 23(b)(3) analysis is "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." However, the extent and nature of any litigation already commenced is not a significant consideration where, like here, the "case does not involve the consolidation of separate suits." *DeLoach v. Philip Morris Companies, Inc.*, 206 F.R.D. 551, 557 (M.D.N.C.2002); *see also* 7A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1780 (2d ed.). The Court has not been advised of the existence of any other litigation on the issues in this case. However, the absence of other litigation suggests that this is a negative value suit and, therefore, a class action is the superior method of adjudicating these issues.

### c. Concentration of the Litigation in a Particular Forum

■ The third consideration in Rule 23(b)(3) analysis, "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," consists of basically two considerations. "First, a court must evaluate whether allowing a Rule 23(b)(3) action to proceed will prevent the duplication of effort and the possibility of inconsistent results.... The other consideration ... is whether the forum chosen for the class action represents an appropriate place to settle the controversy." 7A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1780 (2d ed.). This case is intimately tied to Portsmouth, Virginia. All of the named

plaintiffs were residents of Fairwood Homes, formerly a housing complex in Portsmouth Virginia. Compl. ¶¶ 12–19. Similarly, accordingly to Plaintiffs' Complaint, PPV, PHRA, and Empowerment 2010 each have their principal place of business in Portsmouth, Virginia. Concentrating the claims in this forum will clearly prevent the duplication of effort and the possibility of inconsistent results. Further, all six of Plaintiffs' remaining claims involve federal questions, which makes a federal forum particularly appropriate. Accordingly, the Court finds it is best to concentrate the claims in this forum.

### d. Manageability

■ Manageability is perhaps the most important consideration in a Rule 23(b)(3) determination. An unmanageable class is an indication that individual issues predominate over common questions of law and fact and that there is a better method of adjudicating these issues. Here, however, a class action is entirely manageable.

Defendants argue that individualized damages issues predominate over the common questions and facts and therefore the Court should not certify Plaintiffs' HCDA and URA claims under Rule 23(b)(3). *See, e.g.*, Brief of City of Portsmouth Op. Class Cert. at 9–11. The Fourth Circuit, however, recently noted that "Rule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification. In fact, Rule 23 explicitly envisions class actions with such individualized damage determinations." *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 427–28 (4th Cir.2003) (citing FED. R. CIV. P. 23 advisory committee's note). The need for individual damages determinations[11] does not preclude the court from certifying the

---

9. The Court recognizes that § 5304(d)(2)(A)(ii)(I) of the HDCA does not contain a benefits cap. However, in their arguments opposing Plaintiffs' Motion for Preliminary Injunction, Portsmouth provided evidence of available affordable housing. If affordable housing is available in the Portsmouth area, Plaintiffs may not be eligible for benefits under § 5304(a)(2)(A)(iii)(I) or (II) of the HCDA because their ratio of shelter costs to income should not exceed 30 percent.

10. The Court notes that individual class members who wish to control the prosecution of their individual claims will have the opportunity to opt-out of the class action. FED. R. CIV. P. 23(c)(2)

11. Relocation benefits are not actually damages.

class under Rule 23(b)(3). The Court will, however, address problems that individual damages determinations may create when it considers the overall manageability of the class.

Similarly, Defendants argue that members of the class moved from Fairwood Homes for a variety of reasons and, as a result, the Court must engage in a series of individualized "causation" inquiries to determine which class members are entitled benefits. While the Court agrees with Defendants that the benefit provisions of the URA and HCDA claims require individual determinations, the Court notes that a predominance inquiry should not be reduced to a quantitative inquiry. *See In re American Honda Motor Co., Inc. Dealers Relations Litigation*, 979 F.Supp. 365, 366–67 (D.Md.1997). Instead, the court should compare the common questions and facts with the individual questions and facts make a qualitative determination. *Id.* (refusing to decide 23(b)(3) predominance issue on the basis of quantitative comparison but instead engaging in qualitative comparison). Where the required individualized determinations are simple and straight forward, they do not necessarily predominate, despite their numerosity. *See, e.g., Gunnells* 348 F.3d at 429 (finding that common issues predominate and rejecting Defendant's argument that the necessity of individual inquiries into causation defeats class certification); *Honda Motor Co., Inc. Dealers Relations Litigation*, 979 F.Supp. at 365 (finding that common liability issues predominate because "the liability issues ... far exceed in complexity the more mundane individual damages issues.").

The Court recognizes that class certification may not be appropriate when "the complexity of, and the difficulties connected with, the proof of individual injury and damages.... requires separate mini-trials of an overwhelming large number of individual claims" *Windham v. American Brands*, 565 F.2d 59, 67–68 (4th Cir.1977). However, "in cases where the fact of injury and damage breaks down in what may be characterized as 'virtually a mechanical task,' 'capable of mathematical or formula calculation,' the existence of individualized claims for damages seems to offer no barrier to class certification on grounds of manageability." *Id.* at 67. Here, individualized issues regarding benefits and causation are relatively straightforward and entirely manageable.[12] The common issues, however, are more complex. Resolution of the issues common to the class requires the careful examination of the statutes, the interaction of the statutes, the Defendants' roles in the closing of Fairwood Homes, and the Defendants' obligations under the statutes. Accordingly, the Court concludes that common issues predominate.

The Court notes that it may bifurcate the class action to insure that the trial is manageable. *See, e.g., Shetterly v. Raymark Industries*, 117 F.3d 776, 782 (4th Cir.1997) ("In a complex tort case such as the one at bar, the district court has discretion to bifurcate the trial to ensure that the case is tried in an orderly fashion without confusion to the jury ....."). The Advisory Committee's Note accompanying the 1966 amendments of Rule 23, 39 F.R.D. 98, 106, recommends severing issues in order to allow each class to establish, if they can, defendant's liability to the class as a whole, while reserving the proof of individual issues for a later proceeding. This procedure has been utilized by federal courts in class actions where the advantages and economies to be achieved by a single adjudication of common issues recommends class action treatment of those issues. *See, e.g., Samuel v. University of Pittsburgh*, 538 F.2d 991 (3d Cir.1976); *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir.1973); *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir.

---

12. *See, infra,* page 448. Although the large number of plaintiffs in the class makes joinder impracticable, it does not render the class unmanageable. The URA and the HCDA are set up around families, not individuals. This automatically limits the number of individualized determinations the Court must make. Furthermore, while the parties dispute the number of members in the class, it is clear from Plaintiffs' Complaint that the class cannot consist of more than 850 families. (Initially, Fairwood Homes consisted of 1,500 units. PPV demolished 657 units in 1997. Thus, assuming maximum occupancy, no more than 843 units were occupied in September 1999.) In all likelihood, the number of required individualized determinations will decrease even more once class members are given an opportunity to opt out of the class suit.

1968), *cert. denied* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

Although the Court has not yet devised a trial plan, clearly, the Court can bifurcate liability on the URA and HCDA issues from the causation and benefits determinations. By bifurcating the trial and appointing a Special Master who can resolve individual causation and benefits issues the Court will be able to adjudicate Plaintiffs' claims in the most efficient manner. The Special Master should have little difficult resolving these issues. Moreover, if the Court determines that a triggering event has occurred there is a presumption that any resident who departed after that triggering event is entitled to benefits. 49 C.F.R. § 24.206. Defendants may rebut that presumption by showing (1) "[t]he person received an eviction notice prior to the initiation of negotiations and, as a result of that notice is later evicted or (2) the person is evicted after the initiation of negotiations for serious or repeated violation of material terms of the lease or occupancy agreement." *Id.*[13] Previously, parties submitted to the Court a chart that identifies each residents' date of occupancy and reason for departure. This, along with the presumption in favor of former Fairwood Home residents, should limit the number of necessary individual inquiries. Additionally, if necessary, the Court could have class members answer interrogatories about their departure from Fairwood Homes. The Special Master can review the interrogatories, determine whether the former resident is entitled to either HCDA or URA benefits, and, when necessary, easily calculate those benefits.[14] Accordingly, the Court concludes that this class is manageable.

Furthermore, the Court notes that should manageability problems prove intractable, the Court may simply decertify the class. *See In re School Asbestos Litig.*, 789 F.2d 996, 1011 (3d Cir.1986) (finding that "[w]hen,

and if, the district court is convinced that the litigation cannot be managed, decertification is proper"); *Central Wesleyan College v. W.R. Grace & Co.* 6 F.3d 177, 188–90 ("When such concerns render the class mechanism ineffective, the district court must be prepared to use its considerable discretion to decertify the class").

Having considered the interest of members of the class in individually controlling the prosecution of separate actions, the extent and nature of any litigation already commenced by members of the class, the desirability of concentrating the litigation in this forum, and the difficulties likely to be encountered in the management of the class action, the Court concludes that common questions of law or fact predominate over questions that only affect individual members and that a class action is the superior method of adjudicating Plaintiffs' URA and HCDA claims. Accordingly, the Court finds that Plaintiffs' URA and HCDA claims may be maintained as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## B. Fair Housing Act, Thirteenth Amendment, Fourteenth Amendment, and Title VI claims

■ A court may create subclasses when it deems appropriate. FED. R. CIV. P. 23(c)(4). Pursuant to this power, the Court certifies the following class for the determination of Plaintiffs' Fair Housing Act, Thirteenth Amendment, Fourteenth Amendment, and Title VI claims:

> All *African–Americans* former residents of Fairwood Homes who resided at Fairwood Homes at any time since September 28, 1999.

This subclass satisfies all of the necessary requirements of Rule 23.

---

**13.** Defendants must also show that "eviction was not undertaken for the purpose of evading the obligation to make available the payments and other assistance set forth in this part." 49 C.F.R. § 24.206

**14.** Under the URA and the HCDA displaced persons are entitled to receive reasonable moving

expenses. This is a simple computation. While the computations required under the HCDA and § 4624 of the URA are slightly more complicated, they to can be reduced to fairly straightforward mathematical formulas that simply require the fact finder to plug the individual's rent and income into a formula.

### 1. Rule 23(a) of the Federal Rules of Civil Procedure

Again, Rule 23(a) of the Federal Rules of Civil Procedure requires: (1) the class is so numerous that joinder of all members is impracticable; (2) there exist questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the entire class. FED. R. CIV. P. 23(a). The Court will address each of Rule 23(a)'s requirements in turn.

#### a. Numerosity

In its September 2003 Order, the Court found that, at a minimum, several hundred families left Fairwood Homes because the property closed. Fairwood Homes was occupied predominantly by African American residents. Pls.' Compl. ¶ 37. As the Court noted in its September 2003 certification order, Professor Arthur Miller, after an exhaustion review of cases, concluded "[i]f the class has more than forty people in it, numerosity is satisfied . . . ." *Id.* Assuming just fifty percent of the several hundred families who left Fairwood Homes because the property closed were African–American (a safe assumption given the predominantly African–American nature of the neighborhood), there are at least one hundred African American Fairwood Home residents in the subclass. This is more than enough residents to satisfy Rule 23(a)'s numerosity requirement—the proposed class is so numerous that joinder of all members is impracticable.[15]

#### b. Commonality

Rule 23(a)'s commonality prong requires that "there are questions of law or fact common to the class." Fed. FED. R. CIV. P. 23(a)(2). This prong is satisfied where there is at least one question of law or fact common to the class. *Jeffreys v. Communications Workers of Am.*, 212 F.R.D. 320, 322 (E.D.Va.2003). The fact that some factual

variances in individual grievances exist will not defeat the commonality requirement. *Id.* Thus, the proper inquiry for determining commonality is "whether the group of . . . individuals share questions of law and fact in common such that the class-wide adjudication would be appropriate." *Chisolm v. TranSouth Fin. Corp.*, 184 F.R.D. 556, 561 (E.D.Va.1999). The questions of law and fact that stem from the same set of operative facts, and are common to all class members include:

(1) whether Defendants targeted existing affordable housing, occupied by African–Americans, for demolition and conversion to either commercial/industrial use or middle-income to upper-income residential use; (2) whether Defendants had a policy or practice of providing inferior services, including building and code enforcement, police services, or maintenance services, to the residents of Fairwood Homes; (3) whether Defendants, acting in concert, permitted rundown and dilapidated conditions at Fairwood Homes to worsen to justify the exclusion of the predominantly African–American residents from Fairwood Homes; (4) whether Defendants intended to displace the residents of Fairwood Homes to segregated areas of Portsmouth or out of the city altogether; and (5) whether the City and PHRA maintained policies of *de jure* segregation and whether those Defendants ever took the necessary steps to dismantle those policies.

Pls.' Reply brief, p. 9. These are precisely the same common questions the Court identified in its September order certifying the class. Although this order changes the class eligible for relief under Plaintiffs' Fair Housing Act, Fourteenth Amendment, Thirteenth Amendment, and Title VI claims, it does not alter the common nature of these claims. Further, the Fourth Circuit's order remanding the case does not instruct the Court to reconsider it's Rule 23(a) determination nor do Defendants dispute the Court's conclusion

**15.** The Court notes that for its numerosity requirement it has used data from the date the property closed. The class will actually consist of more African American former residents of

Fairwood Homes. However, the numbers the Court uses demonstrate that joinder is impracticable.

that Rule 23a's commonality prong is satisfied.[16] Accordingly, the Court finds that African–American former residents of Fairwood Homes who resided at Fairwood Homes since September 28, 1999 satisfy the commonality requirement of Rule 23(a).

### c. Typicality

To satisfy the typicality requirement, the claims of the named class representatives must be typical of those of the class. *Lienhart*, 255 F.3d at 146. However, it is not necessary that the claims of the named representatives and those of class members be factually identical. *Chisolm*, 184 F.R.D. at 563. Rather, the named plaintiff must simply "be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart*, 255 F.3d 138 (citing *Falcon*, 457 U.S. at 156, 102 S.Ct. 2364). Here, Plaintiffs' claim that Defendants have violated the Fair Housing Act, the Thirteenth Amendment, the Fourteenth Amendment, and Title VI of the Civil Rights Act of 1964 by intentionally discriminating against the Plaintiffs and/or maintaining a *de jure* system of segregation. Plaintiffs claims are the same type of claims that all African Americans who resided at Fairwood Homes since September 1999 might make. Accordingly, Plaintiffs' Fair Housing Act, and discrimination claims satisfy Rule 23(a)'s typicality requirement.

Defendants argue that the named Plaintiffs raise individual claims that are atypical to the class's claims. Specifically, PPV argues that the named plaintiffs claims are not typical of absent class members because the named plaintiffs have individual retaliation claims against PPV and the class action does not include a retaliation claim.[17] Plaintiffs' Complaint, however, does not set forth any individual claims of retaliation and discrimination in separately numbered counts or paragraphs. In fact, Plaintiffs' indicate in their Complaint that "Plaintiffs bring this action on their own behalf and on behalf of those similarly situated pursuant to Fed. R.Civ.P. 23(a) and 23(b)(1), (b)(2), and (b)(3)." Compl. ¶ 33. Any suggestion by Plaintiffs that they are litigating individual claims in this case clearly defies the conventional guidance set forth in Rule 10(b) of the Federal Rules of Civil Procedure, which requires that "[e]ach claim founded upon a separate transaction or occurrence ... shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth." Plaintiffs' individual claims, particularly any individual retaliation claims, would arise from separate transactions or occurrences and, accordingly, would have been stated in separate counts. Were the Court to interpret the eight counts listed in Plaintiffs' Complaint as a consolidation of the class claims and individual claims, it would be impossible for the Defendants and the Court to determine which of the eight named Plaintiffs' have individual and/or retaliation claims and against whom these claims were pending. Moreover, an approach which allows Plaintiffs' to lump together individual claims and class claims prevents both the Court and the Parties from scrutinizing the sufficiency of each claim. Therefore, PPV's argument that Plaintiffs' individual retaliation claims are atypical of the class claims is moot—Plaintiffs' Complaint consists of eight counts brought on

---

**16.** Rather, Defendants argue that questions affecting only individual class members predominate over common questions of law and fact.

**17.** PPV also argues that Plaintiffs' claims are antagonistic to those of the absent class members because Plaintiffs allege that they received worse treatment than the white residents in the class. This argument may be slightly misplaced. In Newburg on Class Actions, Alba Conte and Herbert B. Newberg highlight the distinctions between Rule 23(a)'s typicality and adequacy of representation requirements. The treatise reads in relevant part:

> Some courts, however, seem to have confused the test with the result and have held that a

plaintiff's claims are typical only if his or her interests are coextensive with the interests of the class members, or if the plaintiff has no interests antagonistic to the interests of the class members. These tests approximate the applicable standard for satisfying the Rule 23(a)(4) prerequisite for adequate representation.

1 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 3:16 (4th ed.). Accordingly, the Court elects to address PPV's arguments that the representatives' claims are antagonistic to the class's claims in the "Adequacy of Representation" section of the Memorandum Opinion and Order. *See, infra*, Part III.B.d.

behalf the class. The Court, however, is mindful that evidence of retaliation and individual instances of discrimination may be relevant in the proof of Plaintiffs' class claims.

### d. Adequacy of Representation

The final prong of analysis under Rule 23(a) is whether the representative parties "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *Lienhart*, 255 F.3d at 146; *Chisolm*, 184 F.R.D. at 564. This prong does two things. First, it serves to uncover conflicts of interest between named parties and the class they seek to represent. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (citing *Falcon*, 457 U.S. at 157–158, n. 13, 102 S.Ct. 2364 (1982)). Second, it "factors in competency and conflicts of class counsel." *Id.* Again, the Court decided in its September 2003 Order that the named Plaintiffs and their counsel would adequately represent the class. The Fourth Circuit did not disturb this conclusion but remanded the case on other grounds.

Defendant PPV, however, claims that Plaintiffs do not adequately represent the class because Plaintiffs' individual discrimination claims require them to minimize the harms suffered by absent class members, particularly white class members. PPV's argument is moot for two reasons. First, as noted *supra* in Part III.B.1.c of this Memorandum Opinion and Order, the Court does not interpret the eight counts of Plaintiffs' Complaint as a consolidation of both individual and class claims. Plaintiffs' Complaint only sets forth eight claims on behalf of the class. Second, for the determination of Plaintiffs' Fair Housing Act, Thirteenth Amendment, Fourteenth Amendment, and Title VI claims, the Court's recent amendment to the class limits the class to "[a]ll African–Americans former residents of Fairwood Homes who resided at Fairwood Homes at any time since September 28, 1999." Accordingly, to the extent that Plain-

tiffs wish to argue that, as African American residents of Fairwood Homes, they received worse treatment than white residents of Fairwood Homes, this argument no longer poses the threat of creating a conflict within the class.

### 2. Rule 23(b)(2)

As previously mentioned, in addition to satisfying the requirement of Rule 23(a), Plaintiffs must also satisfy Rule 23(b) if the Court is to certify the class. FED. R. CIV. P. 23. Rule 23(b)(2) instructs the Court to determine whether "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. P. 23(b)(2). Thus, certification is proper "when injunctive relief or declaratory relief is sought on behalf of a class of similarly situated plaintiffs." *Miller v. Baltimore Gas & Elec. Co.*, 202 F.R.D. 195, 198 (D.Md.2001). Rule 23(b)(2) certification is also appropriate when plaintiffs seek compensatory and punitive damages so long as such damages are ancillary to the claims for injunctive or declaratory relief. *Id.; Zimmerman v. Bell*, 800 F.2d 386, 389–90 (4th Cir.1986); *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594 (4th Cir.1976); *Buchanan v. Consolidated Stores Corp.*, 217 F.R.D. 178, 188, 2003 U.S. Dist. LEXIS 13516 *29 (D.Md.2003). The Court determined in its September 2003 Class Certification Opinion and Order that class certification pursuant to Rule 23(b)(2) was appropriate. Sept. Class Cert. Op. at 18. For the reasons stated in the Court's September 2003 Opinion, the Court finds it appropriate to certify Plaintiff's FHA, Thirteenth Amendment, Fourteenth Amendment, and Title VI claims under Rule 23(b)(2). Furthermore, because Plaintiffs' requests for damages under these claims are ancillary to their claims for injunctive and declaratory relief, the Court finds it appropriate to certify these damages claims under Rule 23(b)(2).[18]

---

**18.** The Court acknowledges that PPV, PHRA, and Empowerment 2010 each argue that Plaintiffs do not have a viable claim against them for

injunctive relief. However, having determined in the September 2003 Class Certification Order that Plaintiffs' have standing to pursue the

## IV. CONCLUSION

For the reasons set forth above, Defendant PPV's Motion to Decertify or, Alternatively, to Remove PPV as a Class Defendant is **DENIED**.

Empowerment 2010's Motion to Strike Plaintiffs' document entitled "Proposed Orders Regarding Class Certification and Statement of Plaintiffs' Class Claims" is **GRANTED**.

To litigate Plaintiffs' claims for the violations of the HCDA and URA, the Court **ORDERS** certified the following class:

All former residents of Fairwood Homes who resided at Fairwood Homes at any time since September 28, 1999.

To litigate Plaintiffs' claims for the violations of the FHA, the Thirteen Amendment, the Fourteenth Amendment, and Title VI, the Court **ORDERS** certified the following sub-class: [19]

All African–American former residents of Fairwood Homes who resided at Fairwood Homes at any time since September 28, 1999.

The Court **ORDERS** Plaintiffs to submit a Proposed Trial Plan within five (5) days of the date of the Memorandum Opinion and Order.[20] Defendants may file any opposition to the Proposed Trial Plan within two (2) days of receipt of Plaintiffs' Proposed Trial Plan. Plaintiffs may reply in further support of their Plan within two (2) days of their receipt of Defendants' opposition to the Proposed Trial Plan.

Additionally, the Court **ORDERS** Plaintiffs to submit, within ten (10) days of the receipt of this Memorandum Opinion and Order, a Proposed Plan for notifying class members of their right to opt out of the class action on the URA and HCDA claims. Such

plan should be consistent with the requirements of Rule 23(c)(2) of the Federal Rules of Civil Procedure and should include a copy of Plaintiffs' Proposed Notice.[21] Defendants may file any opposition to the Proposed Notification Plan within two (2) days of their receipt of Plaintiffs' Proposed Notification Plan. Plaintiffs may reply in further support of their Plan within two (2) days of their receipt of Defendants opposition to the Proposed Notification Plan.

Further, to facilitate the administration of this case, the Court **ORDERS** any party seeking appeal from this order pursuant to Rule 23(f) of the Federal Rules of Civil Procedure to notify the Court in writing of such appeal.

The Court **DIRECTS** the Clerk to send copies of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED.**

---

claims, the Court finds further inquiry into the merits of Plaintiffs' case inappropriate in this context. *See, supra,* n.8; Sept. Class. Cert. Op. at 18.

19. Although the Court has certified both a class and a sub-class, the Court notes that the Court is duty bound to monitor its class decision and, where certification proves improvident, to decertify, subclassify, alter, or otherwise amend its class certification.

20. Plaintiffs are admonished that such Trial Plan should not include a plan to litigate any individual claims for retaliation and disparate treatment, as Plaintiffs have not set forth any identifiable individual claims in their Complaint. *See, supra,* Part III.B.1.c.

21. In order for the parties to comply with the time requirements set forth in this order, it will be necessary for the Court to further amend its trial schedule. The Court will contact the parties to address this issue.